[No. 29918. Department Two. June 3, 1946.]

ANDREW SOLBERG, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.[1]

*Griffin & Gershon* and *Russell F. Stark*, for appellant.

*The Attorney General* and *Phil H. Gallagher, Assistant*, for respondent.

BLAKE, J.—March 18, 1941, plaintiff, while in the course of extrahazardous employment, sustained very severe injuries about the shoulders, back, and chest. Seven ribs were fractured. He made claim to the department of labor and industries, which, having been allowed, was closed June 10, 1942, with a permanent partial disability allowance of six hundred dollars. June 6, 1943, he petitioned for a reopening of the claim on the ground of aggravation resulting from his injuries subsequent to June 10, 1942. The supervisor denied

[1]Reported in 169 P. (2d) 701.

the petition, whereupon plaintiff appealed to the joint board, which granted a rehearing.

Hearings on the petition were had before an examiner, at which both claimant and the department introduced evidence on the issue of aggravation. Upon consideration of this evidence, the joint board sustained the supervisor's order denying the application to reopen the claim. Claimant appealed to the superior court for Clallam county. The cause came on for trial before a jury upon the evidence taken before the examiner—the same evidence the joint board had before it in passing upon the application to reopen.

After the evidence had been read to the jury, counsel for the department interposed a motion to dismiss on the ground that the evidence was not sufficient to take the case to the jury on the issue of aggravation. The court granted the motion and entered judgment dismissing the action. Claimant appeals.

The trial court was of the view that the rule laid down in *Cooper v. Department of Labor & Industries,* 20 Wn. (2d) 429, 147 P. (2d) 522, was applicable under the evidence here presented. The rule stated in that case is that evidence of subjective symptoms standing alone is insufficient to sustain the opinion of a physician that aggravation of a claimant's condition has resulted from his injuries.

However, if there is substantial evidence of aggravation, the issue must be submitted to the jury. *Husa v. Department of Labor & Industries,* 20 Wn. (2d) 114, 146 P. (2d) 191. The question for determination, therefore, is whether there is substantial evidence that claimant's condition had become worse between June 10, 1942, and June 6, 1943.

From the evidence, we think it is clear that claimant is suffering from arthritis. This is demonstrable not only by limitation of any bodily movement which involves the back, but also from X rays taken both at the time of his injuries and just before the hearing on his present application. Concerning the development of arthritis, claimant testified as follows:

"Q. Now, Mr. Solberg, when your claim was closed in June of 1942, was your left shoulder bothering you then? A. No. It bothered to a certain extent but not like it does now. Q. And what are your troubles in the left shoulder now? A. It pains. When I chop, it hurts. Q. Any stiffness there? A. Stiffness and it cracks and cracks and snaps. Q. Was there any stiffness in your left shoulder when your claim was closed in June of 1942? A. No. Q. And where do you have this cracking sensation? A. In the shoulder blade. Q. In what shoulder blade? A. Left."

On cross-examination, he further testified:

"Q. How long have you been bothered with arthritis? A. Well, I never had no rheumatism or arthritis since I got hurt that I know of. MR. GERSHON: You mean before you got hurt. A. Before I got hurt."

A physician, called by claimant, testified:

"Q. Now, Doctor Black, what were Mr. Solberg's complaints when you examined him? A. Limitation of movement and pain beyond that limitation. Q. And where was those complaints? A. He complained of pain in the left shoulder area. I'll say area because it involved practically all the structures in the left shoulder. He complained of quite marked pain in the lower lumbar region. Q. That is the low back, is it, Doctor? A. Yes, lower lumbar region and he complained of periods of nausea and vomiting if he did some work that he felt was a little beyond this limitation that he had.

"Q. Did he complain of any cracking or grating sensation? A. Yes. Q. And do you recall where he complained of those? A. Well, he had them in his left shoulder and back and I got him to bend over and I heard them quite plainly. Q. Was that in the scapular area? A. Well, that sort of crepitus could be heard anywhere in the left shoulder right down into the lumbar region. Q. Did he have any complaints about the site of the rib fracture, that is, in the chest? A. Yes. He complained of a good deal of pain over his heart; over the left side of his chest. . . . Q. Did you examine him with reference to the complaints, Doctor? A. I did.

"Q. And you had some of your own X rays taken and you looked at the X rays in the Department file? A. Yes. Q. And, Doctor, what did your examination of him disclose? A. I think the over all impression I get from his X rays is a marked arthritic condition involving all of the parts under

discussion—practically the whole of his spine and lumbar region. He shows a marked osteo-arthritic condition in the left shoulder of the acromio-clavicular process down on the olecranon too. I've forgotten the other part of that shoulder there. There is lipping on all of the vertebrae down the spine. . . .

"Q. Now, Doctor, what were your findings on physical examination? A. I found definite limitation of movement in practically every direction of the torso. There is limitation of movement in the left shoulder. The exact percentage of limitation would be rather difficult for me to state but I find very definite limitation of movement in the spine all the way down. Beyond a certain point, he does evince great discomfort and beyond this certain point, you hear this crepitus that you referred to a while ago—sort of a cracking sound.

"Q. Now, Doctor, this arthritis that you speak of, in your opinion, did that arthritis pre-exist the accident or did it result from the accident? A. That would be a very difficult thing for me to state positively. Q. Assuming those deposits were present before the accident, from the history related to you and from his work record before the accident, was such arthritis quiescent or active before the accident? A. I couldn't state as to that either to be positive about it. Q. I mean from the history. A. I would conclude that it certainly was not limiting his ability to perform a gainful occupation continuously. Q. Did you inquire as to whether he had any symptoms before the accident? A. As a matter of fact, he specifically stated he was a man who weighed a hundred and ninety pounds and now weighs about a hundred and sixty and symptomless before. Q. From that history of being symptomless before the accident, if there was any arthritis before the accident, in your opinion, would it be active or quiescent? A. Prior to the accident? Q. Prior to the accident, yes. A. I believe that it was quiescent because he was able to continue in a gainful occupation. Q. Doctor, is it common to find that trauma or accident will light up or aggravate a pre-existing, quiescent arthritis? A. Yes, definitely. Q. And do you feel that is what occurred in this case? A. Yes. . . .

"Q. Doctor, from the history related to you and from your examination of the man and of the X rays, what is your opinion on the issue of aggravation between the date of closing in June of 1942 and when he applied to reopen in July of 1943? A. My impression was that an arthritic

process had been started which undoubtedly has produced pain in a man of his age, fifty-two, and since the condition is undoubtedly progressing and is worsening, it undoubtedly is more aggravated. Q. Than since the claim was closed? A. That is right."

We think this testimony constitutes substantial evidence of aggravation sufficient to take the case to the jury. *Husa v. Department of Labor & Industries, supra; Calkins v. Department of Labor & Industries,* 10 Wn. (2d) 565, 117 P. (2d) 640. And, since the doctor's opinion was not based wholly upon subjective symptoms related to him by claimant at the time of his examination, the case does not fall within the rule of *Cooper v. Department of Labor & Industries, supra.*

Respondent has interposed a motion to dismiss the appeal on the ground that the transcript and briefs were not filed in this court within ninety days after the appeal had been taken, as required by subds. 1 of Rules 8 and 11 of the Supreme Court, 18 Wn. (2d) 7-a, 12-a. The motion was made, however, after the briefs and transcript were on file. No prejudice appears to have resulted from the claimant's failure to comply with the rules. Under the circumstances, the motion will be denied. See *In re Peterson's Estate,* 6 Wn. (2d) 294, 107 P. (2d) 580.

Judgment reversed, with instructions to grant a new trial.

BEALS, C. J., ROBINSON, JEFFERS, and CONNELLY, JJ., concur.