[No. 31207. Department One. February 23, 1951.]

OLOF FALKENSTROM, *Appellant* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *et al., Respondents.*[1]

*Walthew, Gershon, Yothers & Warner,* for appellant.

*The Attorney General* and *J. Arnold Cobley, Assistant,* for respondent department of labor and industries.

BEALS, J.—Olof Falkenstrom was employed by Preston Mill Company, a corporation, as a brakeman and loader in transporting logs to the mill, from August, 1906, until April 25, 1928. On the date last mentioned, while in the performance of his duties, he was struck across his face by a steel cable one-half inch in thickness. The cable struck him under his eyes, across the bridge of his nose (which was

[1]Reported in 232 P. (2d) 917.

broken in two places), and across his cheek bones, his teeth also being injured. He lost blood from his head, his nose, and his ears. He was hospitalized for six or seven weeks, being treated by Dr. E. W. Templeton. He did not work for some time after the accident, being paid thirty-five dollars a month for eighteen months by the department of labor and industries for time loss, and at the end of that period was paid twelve hundred dollars, representing fifty per cent of the maximum amount for unspecified partial disability. His claim was then closed.

December 14, 1946, about sixteen years after the claim was closed, Falkenstrom petitioned the department to re-open his claim. His application was denied by the supervisor in February, 1947, the reason assigned being that there was no medical proof of aggravation. His petition for a rehearing before the joint board was granted March 3, 1947. In the course of this hearing, Falkenstrom testified that he worked as a watchman in the woods for the Snoqualmie Falls Lumber Company for about thirteen years, or until about 1942, and that in the latter year he was employed in the shipyards, continuing there during the war period as a helper; that after the close of the war he was employed by Isaacson Iron Works, and that at the time of the hearing was again in the employ of a shipyard.

After the hearing, by order dated October 11, 1948, the joint board denied Falkenstrom's claim for additional compensation, from which ruling he appealed to the superior court for King county. The action was tried to a jury, but, at the close of the plaintiff's case, the action was dismissed upon motion of the attorney general, the trial court being of the opinion that no aggravation of the injury had been shown.

From the judgment of dismissal, entered June 17, 1949, Falkenstrom appealed to this court, making the following assignment of error:

"The trial court erred in denying appellant's motion for a new trial and in dismissing the action on a basis of no showing of aggravation."

The matter was presented before the superior court upon the record made before the joint board. From the transcript of the record before the board, it appears that appellant testified that he first noticed an impairment of his hearing two or three years after his claim had been closed, and that thereafter his hearing had gradually become more and more impaired; that, about ten years after he was injured, appellant consulted Dr. Templeton (who had treated him after the injury), who cleaned his ears, but that his hearing was not improved by this treatment. About a year later, the doctor repeated the treatment, but without benefit. Appellant also testified that his nose frequently clogged up, that he suffered from headaches, and that he was no longer able to work as a logger. He testified that he worked for the Snoqualmie Falls Lumber Company as a watchman in the woods for thirteen years, leaving that employment in 1942, in which year he went to work in the shipyards, as above stated.

Dr. A. R. Miller, called as a witness by appellant before the joint board, testified that he was licensed to practice medicine and surgery in the state of Washington, specializing in ear, nose, and throat cases; that he first examined appellant March 29, 1947, appellant then informing the witness that he had been injured in 1928, and that he had recently been suffering from headaches, poor memory, and impairment of his hearing. The doctor then examined appellant's ears, nose, and throat. We quote from the doctor's testimony as follows:

"A. Examination showed the ear drum of the right ear was dull, white and scarred. No reflex, no light reflex, sharp process was slightly prominent. Q. What do those things indicate, doctor? A. Indicate an infection, well, usually repeated infection, gradual infection from the nose through the ear tubes. Hammer was slightly reddened. Left ear, the drum was dull, white and scarred. Light reflex was dull and the sharp process was also prominent.
. . .
"A. In the nose, the septum was deviated to the left with a basal spur to the left anteriorly and enlargement in the

right inferior turbinate with resulting poor nasal space on both sides. . . .

"Q. What is the septum? A. The septum is a sort of a divided curtain between—divides the nose into two equal halves and this curtain is supposed to be in the midline, and it is made up of bone and cartilage. Q. What is the significance of a deviated septum in this case? A. In this particular case, according to his history, we must conclude his nose was broken at the time of the accident so as to cut down on the nasal space and in such cases we often see a loss of hearing and can expect to see a loss of hearing gradual loss of hearing. . . .

"Q. How and why from a medical standpoint, does this loss of hearing develop when there is poor nasal space and a deviated septum? . . . A. Over a period of years there is sort of a gradual and repeated insult to the auditory tubes, ear tubes from the nose, by necessary blowing and some pressure from whatever cause, whatever source, that would disperse infected material up into the ear, and over a period of years you get a gradual scarring and loss of hearing. . . .

"A. I think the loss of hearing was due to two causes, one, concussion and gradual loss of hearing due to poor nasal space."

The witness further testified that from his examination he found appellant had apparently suffered a fifty per cent loss of hearing in both ears; that the loss was permanent and would increase. The witness was also of the opinion that appellant's headaches resulted from his injury.

We quote again from the examination of the witness:

"Q. Dr. Miller, how in your opinion should the permanent partial disability resulting from this injury be rated? . . . A. I feel that he should have about 75%. Q. Of the maximum unspecified permanent partial disability. A. Yes. Q. To cover what condition, doctor. A. That is to cover this loss of memory and headaches, poor hearing and loss of his teeth and general decreased ability to work."

Carl Burman testified on appellant's behalf, stating that he had known appellant since childhood, and that they had both worked for Preston Mill Company; that he saw appellant frequently prior to the latter's injury and never observed that appellant suffered from headaches or had

nasal or hearing difficulties; that since appellant's injury he had seen him frequently and had observed that appellant's eyes frequently watered and appellant complained of headaches and that he was "a little hard of hearing."

We shall refer to respondent department of labor and industries as respondent.

Appellant contends that the evidence of his witness Dr. Miller relative to both subjective and objective symptoms disclosed by his examination of appellant, particularly the testimony of the witness concerning objective symptoms which he discovered, was sufficient to require denial of respondent's motion for a nonsuit.

The record of the original hearing before the department was not available, having been destroyed pursuant to legislative enactment.

Respondent, while admitting that the workmen's compensation act should be liberally construed in favor of a claimant, argues that the testimony introduced by appellant before the superior court was insufficient to justify submission of the case to the jury and that the trial court did not err in granting respondent's motion for a nonsuit.

Respondent calls attention to the fact that appellant made no claim for loss of hearing, due to the accident, at the time the matter was considered by the department, and that appellant noticed no defect in his hearing until two years or so after the accident, and that appellant introduced no evidence showing that compensation had not been allowed for his present disability.

Beyond question, appellant suffered a serious injury. While it is true that advancing years frequently result in a decrease of ability to hear, it is also true that an injury, such as that suffered by appellant, might not immediately, or even during a considerable period of time, result in impairment of hearing which would be noticed by the person injured.

As above stated, Dr. Miller attributed appellant's impaired hearing to two causes—"Concussion and gradual loss of hearing due to poor nasal space." The doctor testified

that, under the circumstances disclosed by his examination of appellant, a loss of hearing would gradually appear during a period of years.

In the case at bar, we are concerned only with the sufficiency of the evidence introduced by appellant to require denial of respondent's motion for a nonsuit.

We have examined our decisions cited by respondent (including the case of *Petersen v. Department of Labor & Industries,* 36 Wn. (2d) 266, 217 P. (2d) 607). We are, however, of the opinion that the record before us brings this case within the rule laid down in *Anderson v. Department of Labor & Industries,* 23 Wn. (2d) 76, 159 P. (2d) 397, and *Solberg v. Department of Labor & Industries,* 25 Wn. (2d) 156, 169 P. (2d) 701, and cases therein cited.

While the evidence introduced by appellant appears insufficient to carry his case to the jury in connection with certain of his contentions, such as loss of memory and headaches, we are convinced that the evidence introduced by appellant concerning impairment of his hearing was sufficient to require denial of respondent's motion for dismissal interposed at the close of appellant's case.

The judgment appealed from is reversed with instructions to vacate the judgment dismissing the action and grant appellant's motion for a new trial.

SCHWELLENBACH, C. J., HILL, DONWORTH, and FINLEY, JJ., concur.

## ON REHEARING

[*En Banc.* July 5, 1951.]

PER CURIAM.—After the filing of the Departmental opinion in the above-entitled cause February 23, 1951, the respondent department of labor and industries filed a petition for rehearing, contending that, without a statement of facts, this court should not review the decision of the superior court, citing *Guffey v. Department of Labor & Industries,* filed March 15, 1951 (post p. 236, 229 P. (2d) 321), and other previous decisions of this court.

The petition for rehearing was granted and the case reheard May 29, 1951, before this court sitting *En Banc.*

After the granting of respondent's petition for rehearing and before the case was reheard *En Banc*, the appellant filed in this court a supplemental transcript showing that September 14, 1949, the appellant had filed in the office of the clerk of the superior court for King county his proposed statement of facts. The fact that such proposed statement of facts had been filed was not before the court when the case was first argued, nor was that fact referred to in the briefs or oral arguments of either party.

The statement of facts filed September 19, 1949, and presented to the superior court by respondent, was a proposed amended and amplified statement of facts which was accepted by both parties and certified by the trial court September 28, 1950. This statement of facts was the only one before this court when the cause was argued before the Department and was the statement referred to in the Departmental opinion filed in the cause.

The judgment appealed from was signed by the judge of the superior court who heard the cause and filed June 17, 1949, and appellant's proposed statement of facts was filed in the office of the clerk within ninety days after entry of the judgment.

From the record before us at the time of the argument of the cause before the court sitting *En Banc*, it appeared that the statement of facts certified by the trial court was an appropriate portion of the record and that it should have been considered by the court and should not have been stricken.

From this statement of facts, it affirmatively appears that a certain portion of the departmental record and transcript was read to the jury, and that objections to the evidence before the respondent department were not renewed or again offered by either party.

It is accordingly ordered and directed that the following portion of the Departmental opinion be stricken and not printed as part of the opinion in the Washington Reports:

"The record contains a statement of facts signed by the trial judge, which recites briefly the proceedings before the superior court. This statement, which is also referred to as

a 'report of the trial of the above entitled action,' was evidently prepared by the attorney general representing the department, appellant's counsel having acknowledged service of a copy thereof September 19, 1949, the statement having been filed with the clerk of the superior court for King county on the same day. As this statement was filed more than ninety days after the entry of the judgment in the cause, it cannot be considered in connection with the appeal now before us.

"The 'certified joint board record' which was presented before the jury and the trial court, and which contains all the evidence introduced before the joint board, is before us as part of the record. *Boeing Aircraft Co. v. Department of Labor & Industries*, 22 Wn. (2d) 423, 156 P. (2d) 640; *Cabe v. Department of Labor & Industries*, 35 Wn. (2d) 695, 215 P. (2d) 400.

"Appellant's testimony has been referred to, *supra*."

The court adheres to the Departmental opinion as so amended.