[No. 1560-2. Division Two. March 5, 1976.]

JACK D. KENNEDY, *Respondent*, v. MELVIN E. MONROE, JR., ET AL, *Appellants*.

*John F. Biehl* (of *Lee, Smart, Cook, Dunlap & Biehl*), for appellants.

*H. Frank Stubbs*, for respondent.

REED, J.—Plaintiff, Jack D. Kennedy, brought this action to recover for personal injuries allegedly sustained in a rear end collision on October 5, 1972. Liability was determined in plaintiff's favor by summary judgment and the case proceeded to trial on the issue of damages only.

The defendants appeal from judgment on a verdict in plaintiff's favor for $7,775, and the assignments of error present the following issues for our resolution.

1. May a nontreating physician who has examined a party for the sole purpose of qualifying as an expert witness at trial relate what that party told him concerning the cause of the injury, subjective symptoms, and course of treatment?

2. If such a history is admissible through the physician, for what purpose and to what extent may it be considered?

3. May a nontreating physician testify concerning the necessity for medical services provided and the reasonableness of the charges made therefor by others?

At trial plaintiff testified concerning the collision, his alleged injuries, his complaints, suffering, and discomfort, and the course of medical treatment he had undergone. Plaintiff had been seen by two doctors who took X rays and prescribed treatment. On cross-examination plaintiff admitted he had been told that X rays taken immediately after the accident were negative, but when he was asked if the X rays taken about 1 year later were also negative, the court sustained a hearsay objection.

Plaintiff called as his only medical witness one Dr.

Bridgeford who had examined plaintiff for the sole purpose of testifying at trial. Dr. Bridgeford was allowed, over objection, to relate the entire history given him by the plaintiff as to the facts of the accident, his symptoms of pain, suffering, and discomfort, and his course of medical treatment. The doctor further testified that based on the plaintiff's history, he took X rays and conducted a physical examination, both of which objectively supported the presence of plaintiff's subjective symptoms. Utilizing the history and his findings, it was the doctor's opinion that plaintiff had sustained a subluxation or displacement of a vertebra with attending ligamentous and soft tissue injury resulting in some impairment in his neck movement accompanied by pain and discomfort. Dr. Bridgeford felt that the condition was fixed and plaintiff would continue to experience these symptoms in some degree. The doctor further stated that plaintiff's injuries probably resulted from the collision of October 5, 1972.

Defendants countered Dr. Bridgeford's testimony with that of a Dr. Tobin who had examined the plaintiff before trial and who stated that his physical examinations and X rays of plaintiff provided no objective support for plaintiff's complaints.

Defendants rely primarily on the case of *Petersen v. Department of Labor & Indus.*, 36 Wn.2d 266, 217 P.2d 607 (1950) and *Hinds v. Johnson*, 55 Wn.2d 325, 347 P.2d 828 (1959) to support their argument that a nontreating physician is limited to relating objective findings and answering hypothetical questions and is prohibited from testifying concerning subjective symptoms or medical history related to him by a claimant. Because Washington decisions continue to cite *Petersen*'s distinction between the treating and nontreating physician we deem it necessary to commence our discussion by quoting extensively from that decision where the court said at pages 268-70:

> Conclusions as to the health and capacity of a claimant lie in the realm of medical knowledge. . . . We have not been concerned with the credibility of the medical

witnesses, since expert and lay witnesses are treated alike as to that. The chief source of our recurring problem, on the question of medical testimony . . . is found in the fact that one rule applies when the medical testimony is given by a doctor who examines a patient for the purpose of treating him, while a different rule applies when the testimony is given by a doctor who examines an individual for the sole purpose of qualifying himself to be a witness as to a person's physical condition. This presents a question of the competence of such evidence in each case, because the element of *hearsay* always inheres in medical conclusions.

All doctors take the history of their patients, when it is needed to arrive at a correct diagnosis. Their own skilled observations, aided by the best medical equipment, lead only to objective findings. They cannot clinically observe a pain or a functional disorder. Such subjective symptoms must be related to them by the patient, or by someone on his behalf, and are frequently indispensable to a correct diagnosis and course of treatment.

The doctor receives the statement of these subjective symptoms informally, and they are not given under oath, nor does he attempt to rebut them. The self-interest of the patient is a sufficient guarantee of the trustworthiness of such statements, where the examination is made for the purpose of treatment. Thus, it is the universal rule that, if the doctor who treats a patient later becomes a witness, he may testify as to his medical conclusions, which may be based substantially on subjective symptoms which are in the realm of hearsay. *This is a recognized exception to the hearsay rule of evidence. . . .* [Italics ours.]

The reason for this exception to the rule disappears instantly, when the examination is not made within the doctor-patient relationship for the purpose of treatment, but is made only for the purpose of qualifying the doctor as a witness. Under such circumstances, a claimant may, in describing his symptoms to the doctor, paint a dark picture. He may think his best interest will be served by exaggeration and fabrication of symptoms. Hence, medical conclusions based upon these statements, which were not given under oath or subject to cross-examination, violate the hearsay rule and are not admissible. . . .

. . . The doctor who examines the party only for the purpose of qualifying as a witness, is limited in his

testimony to objective findings and the answering of hypothetical questions.

(Citations omitted.)

In the case of *Kresoya v. Department of Labor & Indus.*, 40 Wn.2d 40, 240 P.2d 257 (1952), our Supreme Court noted that it had held, in a long line of cases, that a physician is not restricted to testimony concerning his objective findings, but may couple those findings with other competent evidence in reaching a medical conclusion.[1] The *Kresoya* court also points out that in *Knowles v. Department of Labor & Indus.*, 28 Wn.2d 970, 184 P.2d 591 (1947) a non-treating doctor was allowed to consider the testimony of lay witnesses together with his own objective findings so as to causally connect an aggravation to the original injury. Using these cases as the springboard, the *Kresoya* court appears to depart from the strict *Petersen* rule regarding the testimony of a physician who saw claimant but once for the purpose of testifying on his behalf, by stating at pages 45-46:

> In order that Dr. Williams might acquire testimonial knowledge of the condition of appellant, it was necessary that he obtain from him some of the history of the case. He had the benefit of X-ray pictures. He discovered by them and the tests he made the existence of many objective symptoms. He then became able to form an opinion that the condition of appellant caused by the original injury had become aggravated.
>     . . . The rule that an expert medical witness may not base his opinion upon subjective symptoms alone is designed to protect . . . against unfounded claims . . . If such claims could be established by the testimony of a physician who based his opinion entirely upon what the claimant told him, it would open the door to fraudulent claims, as well as those mistakenly made in good faith. A claimant might honestly believe his subsequent condition arose out of his original injury, but this

[1] *Spalding v. Department of Labor & Indus.*, 29 Wn.2d 115, 186 P.2d 76 (1947); *Solberg v. Department of Labor & Indus.*, 25 Wn.2d 156, 169 P.2d 701 (1946); *Hastings v. Department of Labor & Indus.*, 24 Wn.2d 1, 163 P.2d 142 (1945); *Anderson v. Department of Labor & Indus.*, 23 Wn.2d 76, 159 P.2d 397 (1945).

is a medical question and an opinion thereon must be derived from sources other than the claimant's statement. *These protective rules, however, must not be applied to situations where there is a combination of subjective and objective symptoms, which an expert may be able to tie together,* and we think this is made very clear by a careful reading of the cases we have cited. The physician must of necessity obtain some history from the claimant, and has a right to make proper use of it in connection with objective findings which he as an expert may make by an examination, the making of tests, the use of X-ray pictures and other proper data.

(Italics ours.)

Later decisions cite both *Petersen* and *Kresoya,* but not until Justice Hunter's dissent in *Cooper v. Department of Labor & Indus.,* 54 Wn.2d 428, 342 P.2d 218 (1959) has there been any suggestion that *Kresoya* might have changed the *Petersen* rule. Justice Hunter refers to the *Petersen* rule at page 434 as follows:

This rules out the consideration of subjective symptoms, even though coupled and related with objective findings. The rule announced by this language in the *Petersen* case, *supra,* was therefore impliedly overruled in the *Kresoya* case, *supra.* We should now, for clarification, expressly overrule the *Petersen* case in so far as it is inconsistent with the rule announced in the *Kresoya* case. In the instant case, a review of the record discloses that the conclusions of Dr. Steele were not based on subjective symptoms *alone* but upon a combination of related subjective and objective symptoms. Thus, this testimony comes within the rule of the *Kresoya* case, and the trial court, therefore, erred in striking it.

Dr. Steele, in addition to the conclusions discussed above, testified in answer to a *hypothetical question* propounded by counsel for the appellant, that there was a causal relationship between the shocks and appellant's condition. The hypothetical question included, among other facts, the subjective symptoms related to the doctor at the time of his examination of the appellant, but concerning which *the appellant had testified under oath and upon which she had been cross-examined.* The trial court properly held such conclusion was admissible.

In *Hinds v. Johnson, supra*, the controversy centered around the testimony of an ophthalmologist who related the claimant's responses during administration of an examination involving the use of a complex lens adjustment instrument. The issue was disposed of when the court held there were sufficient safeguards in the test itself to assure truthful responses, thus qualifying those responses as objective findings rather than subjective complaints.[2] In arriving at this result, however, the *Hinds* court recognized the *Petersen* rule as the yardstick by which the competency of a nontreating doctor's testimony is measured, repeating the rationale of the presence or lack of "self-interest."

We read the *Hinds* decision as not rejecting the modifications of *Kresoya* because the court was not there faced with an apparent *combination* of both subjective and objective symptoms; having found the patient's responses to be objective it was not necessary to discuss the case in terms of *Kresoya*.

In *Lyster v. Metzger*, 68 Wn.2d 216, 412 P.2d 340 (1966), a Dr. O'Neil, at the behest of plaintiff's attorney, examined the plaintiff on one occasion in order to testify at trial. Additionally, however, he conferred with one of the plaintiff's treating doctors and also referred plaintiff to a neurologist who reported his findings to Dr. O'Neil, who then prescribed by mail, certain medications and exercise. The trial court permitted Dr. O'Neil to testify as a "treating physician" that plaintiff had some permanent partial disability in his back. The *Petersen* distinction between the treating and nontreating doctor is restated in *Lyster*, but the court found no error in the admission of Dr. O'Neil's testimony; the plaintiff had testified at trial concerning his history, as had two of his treating doctors and all of the

---

[2] In *McCormick's Law of Evidence* § 293, at 693, n.45 (2d ed. E. Cleary 1972), the *Hinds v. Johnson*, 55 Wn.2d 325, 347 P.2d 828 (1959) case is cited as an example of the "uncomfortableness of many courts" with the more restrictive rule applying to forensic physicians and as indicating a tendency to circumvent the stricture by narrowing the definition of "subjective" symptoms.

doctors, including the neurologist, had found objective evidence supporting the claimed injury and its cause. It is not clear if Dr. O'Neil's responses were elicited by hypothetical questions or were based in part on the personal history given him by the plaintiff.

In the case of *Matthias v. Lehn & Fink Prods. Corp.*, 70 Wn.2d 541, 424 P.2d 284 (1967), a defense doctor was permitted to testify over objection that he had examined plaintiff only so that he might testify. The court cites neither *Petersen* nor *Kresoya*, but does cite *Hinds v. Johnson*, *supra*, in holding that the restriction applies only to one hired by a claimant to examine and testify for him. It would thus seem the Washington Supreme Court was preserving the *Petersen* distinction, at least impliedly.

In *Kain v. Logan*, 79 Wn.2d 524, 487 P.2d 1292 (1971), the court cites *Petersen* as authority for the distinction between treating and nontreating doctors, but assigns different reasons therefor at page 527:

> Such testimony may be included as a part of factual material upon which the medical expert's opinion claims to rest *and though hearsay is allowed*, it remains subject to most of the safeguards of nonhearsay evidence. Stated another way, the treating physician may testify as to what his patient told him about his history, condition and injuries, because the dangers of falsity and inaccuracy may be alleviated in the cross-examination of the doctor, or in the calling of the plaintiff himself as an adverse witness, or possibly by independent medical examination at the instance of the cross-examining party.

(Italics ours.)

From our review of the cases dealing with the point, we see an apparent erosion of the strict rule of *Petersen*, and a growing recognition that in appropriate circumstances and under proper safeguards the admissibility of patient recitals should include those made to a nontreating physician. While the "self-interest" factor used by the *Petersen* court to distinguish between treating and nontreating physicians is valid, the results are not realistic if the rule is strictly applied because it keeps from the jury

information which might be helpful and indeed indispensable to their assessment of the doctor's conclusions. Examination of a claimant under oath to reveal any discrepancies within the history given and the use of hypothetical questions to add additional evidentiary facts or point out omissions or embellishments by the claimant in what he told the doctor, are adequate safeguards; the question merely becomes one of the weight to be attached to such testimony and the doctor's conclusions.[3]

We hold, therefore, that an otherwise qualified physician, whether he was seen by the plaintiff for the purposes of treatment—and possibly to testify—or solely for the purpose of enabling him to testify on plaintiff's behalf, may relate what the plaintiff told him regarding (1) the general nature or cause of the injury insofar as it pertains to treatment and not fault, (2) the plaintiff's past and present subjective complaints and symptoms and (3) the course of medical treatment followed by the plaintiff. The nontreating physician is not limited in his testimony to objective findings and to answering hypothetical questions.

Based upon the facts assumed to be in evidence or upon the facts contained in the plaintiff's recital, the doctor may be asked to state his medical conclusions as to the nature and extent of the injury, if any, and the proximate cause of such injury. The validity of his conclusions is then dependent upon the "factual" evidence in the record to support (1) the facts as given him in the hypothetical question or (2) the facts as narrated to him by the plaintiff. If the facts upon which he bases his conclusions differ from the actual facts established by the evidence, his opinion may have little or no weight with the fact finder. There will, of course, still be instances when the trial court must determine, as a matter of law, whether such testimony should be considered or stricken as having no proper foundation.

---

[3]See 35 Calif. L. Rev. 193 (1947) and the extensive article in 15 Vand. L. Rev. 473 (1962), with particular reference to the discussion on the distinction between treating and nontreating doctors, pages 493-99, in which the author notes at page 496 at least seven reasons for making no such distinction.

By so holding we do not expand upon the limited purpose for which such a narrative of the patient's history is admitted. The historical recitation by the doctor is not admitted as proof of the facts recited, but as proof only that the statements were made and utilized in part by the doctor as a basis for reaching his medical conclusions, *and as such are not hearsay*. *Floyd v. Department of Labor & Indus.*, 68 Wn.2d 938, 416 P.2d 355 (1966); *Smith v. Ernst Hardware Co.*, 61 Wn.2d 75, 377 P.2d 258 (1962); *Estes v. Babcock*, 119 Wash. 270, 205 P. 12 (1922).

> It is the rule in this state that a doctor who treats a patient and later becomes a witness may, in relating his medical conclusion, testify relative to statements made to him by his patient, *as an exception to the hearsay rule*. *Hinds v. Johnson*, 55 Wn. (2d) 325, 347 P. (2d) 828 (1959); *Petersen v. Department of Labor & Industries*, 36 Wn. (2d) 266, 217 P. (2d) 607 (1950); 51 A.L.R. (2d) 1051. A physician may relate these statements regarding symptoms for the limited purpose of supporting his medical conclusion. The statements made by the patient to the doctor, which constitute the basis of his expert opinion, *are not evidence which establishes the fact of the patient's condition*. *Kraettli v. North Coast Transp. Co.*, 166 Wash. 186, 6 P. (2d) 609, 80 A.L.R. 1520 (1932); *Poropat v. Olympic Peninsula Motor Coach Co.*, 163 Wash. 78, 299 Pac. 979 (1931); *Estes v. Babcock*, 119 Wash. 270, 205 Pac. 12 (1922).

(Italics ours.) *Smith v. Ernst Hardware Co., supra* at 79.[4]

---

[4] A recognition of this distinction will usually lead to a request for a cautionary or limiting instruction to the jury on the effect to be given the recital. We note here that much of the confusion on this subject stems from decisions in this and other jurisdictions referring to an "exception" to the hearsay rule in allowing recital of the patient's history. *Petersen v. Department of Labor & Indus.*, 36 Wn.2d 266, 217 P.2d 607 (1950); *Smith v. Ernst Hardware Co.*, 61 Wn.2d 75, 377 P.2d 258 (1962); *Kain v. Logan*, 79 Wn.2d 524, 487 P.2d 1292 (1971). As we have attempted to make clear, the recital is *not* hearsay when admitted only as the basis for the doctor's opinion and not as substantive evidence of the facts recited. Nearly all hearsay definitions include only statements "offered as an assertion to show the truth of matters asserted therein." *McCormick's Law of Evidence* § 246, at 584 (2d ed. E. Cleary 1972); 5 J. Wigmore *Evidence* §§ 1360-1361 (3d ed. 1940); *Moen v.*

Because the patient's recitals are received for this limited purpose, and are not substantive evidence of the facts recited, a claimant may fail in his proof if he does not present those facts in his own sworn testimony or through that of others. *Smith v. Ernst Hardware Co., supra; Floyd v. Department of Labor & Indus., supra.*[5]

In the instant case, therefore, it was not error to allow Dr. Bridgeford to relate the history given him by Mr. Kennedy as the basis for the doctor's conclusions regarding the nature and extent of the injury and its cause.

Defendants next challenge the admissibility of Dr. Bridgeford's testimony regarding the necessity for and reasonableness of certain charges for medical services provided plaintiff by others. Proof of such special damages need not be unreasonably exacting and may come from any witness who evidences sufficient knowledge and experience respecting the type of service rendered and the reasonable value thereof. The witness need not be the attending physician or a physician at all, for that matter, so long as he demonstrates the requisite qualifications within the sound

---

*Chestnut*, 9 Wn.2d 93, 113 P.2d 1030 (1941); *State v. Murphy*, 7 Wn. App. 505, 500 P.2d 1276 (1972).

Fed. R. of Evidence, rule 803(4), at 576 (1975), effective July 1, 1975, reads as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

(4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

For the proposition that this rule rejects the distinction between treating and nontreating physicians, see 4 J. Weinstein, *Evidence* § 803(4)[01] (1975) and Fed. R. of Evidence Annot., Advisory Committee's Note at page 135 (1975).

[5]In *Floyd v. Department of Labor & Indus.*, 68 Wn.2d 938, 416 P.2d 355 (1966), which involved a treating physician, the court refused to allow his history recitation to be used as substantive evidence, saying at page 942, "There is no explanation for the failure of claimant to acquaint his medical witness with the state of affairs *described in the sworn direct testimony of claimant.*" (Italics ours.)

50 

discretion of the trial court, at which point the issue becomes one of the weight to be attached to his testimony. *Palmer v. Massey-Ferguson, Inc.*, 3 Wn. App. 508, 476 P.2d 713 (1970); *Tokarz v. Ford Motor Co.*, 8 Wn. App. 645, 508 P.2d 1370 (1973); 12 A.L.R.3d 1347 (1967). Dr. Bridgeford was an orthopedic surgeon in the United States Army for 21 years from 1951 to 1972. Upon retirement he established a private practice in Pierce County and had been practicing for almost 2 years prior to trial. With this background Dr. Bridgeford was competent to testify concerning the reasonableness and necessity of medical services rendered by others for the treatment of the injuries revealed by Dr. Bridgeford's examination. See J. Stein, *Damages and Recovery* § 96 (1972).

Defendants lastly assign error to the trial court's refusal to allow defendants to ask a hypothetical question of Dr. Bridgeford which included an assumption that the X rays taken a year after the accident were also negative. Such a question was improper because the fact assumed was not in evidence nor had the fact been related to the doctor in plaintiff's history and defendants admitted they had no independent evidence of the fact.

Judgment affirmed.

PETRIE, C.J., and PEARSON, J., concur.