[No. 29372.    Department Two.    February 19, 1946.]

ERLAND LARSON, *Appellant,* v. THE DEPARTMENT OF LABOR
AND INDUSTRIES *et al., Respondents.*[1]

[1]Reported in 166 P. (2d) 159.

*Griffin & Gershon* and *Russell F. Stark,* for appellant.

*The Attorney General* and *Harry L. Parr, Assistant,* for respondent Department of Labor and Industries.

*L. B. Donley,* for respondent Weyerhaeuser Timber Company.

JEFFERS, J.—Claimant, Erland Larson, was injured on March 26, 1937, while engaged in extrahazardous work. The injury received by him may be described generally as a fractured skull. Mr. Larson thereafter filed a claim with the department. On September 28, 1939, the supervisor entered an order closing the claim, allowing time loss to September 28, 1939, and forty degrees permanent partial disability, and paid to claimant a permanent partial disability of twelve hundred dollars.

No application was made to the joint board for a rehearing based upon the above order, but on August 16, 1942, claimant filed with the department an application to reopen the claim on the ground that his previous condition had become aggravated. The supervisor made an investigation of the claim of aggravation, and on September 24, 1942, entered an order that the claim would be continued closed in accordance with the final order and notice of September 28, 1939.

On September 29, 1942, claimant made application to the joint board for rehearing and reopening, stating in his application that he was injured in the course of extrahazardous work in the employ of Weyerhaeuser Timber Company on

March 26, 1937, when he was caught between two cars; that at the present time he is suffering from numerous disabilities in his head, neck, back, and arms; that since the closing of his claim on May (September) 28, 1939, his condition has grown worse, especially in his neck; that he has sustained a permanent partial disability in excess of that previously awarded him by the department.

On October 13, 1942, the board granted a rehearing. The first hearing was held on November 13, 1942, before E. J. Cummins, an examiner, at which time claimant, W. F. Watkins, and Dr. E. A. Rickards were called and sworn, and testified on behalf of claimant. The cause was continued to February 5, 1943, at which time the department called Drs. Conrad Jacobson and S. N. Berens.

On March 1, 1943, the joint board entered an order sustaining the action of the supervisor in refusing to grant claimant further compensation on account of aggravation. Claimant appealed from the decision of the joint board to the superior court for King county.

The matter came on for hearing before the court and jury on October 26, 1943, the department being represented by Harry L. Parr, the claimant by Van Griffin, of Griffin & Gershon, and the employer by L. B. Donley.

In support of his appeal, counsel for claimant read to the jury from the testimony taken before the joint board, except such as was objected to and the objection sustained. Up to this point, counsel for appellant had read from the testimony of his own witnesses taken by the examiner at the hearing held on November 13, 1942. Counsel for claimant then stated that he desired to read from the testimony of the department's witnesses taken at the hearing held on February 5, 1943. Then followed a colloquy between the court and counsel as to whether or not, in offering this testimony, claimant was making Drs. Jacobson and Berens his witnesses and making this testimony part of his case in chief. Mr. Parr, at this point, stated that if the claimant had rested the department desired to make a motion. Mr. Griffin stated that he had not closed his case, whereupon the court refused to permit him to read from the testimony

of the department's witnesses, an objection having been made to the introduction of this testimony unless appellant desired to make Drs. Jacobson and Berens his own witnesses. Mr. Griffin then offered to read from the recross-examination of Dr. Jacobson. The offer was refused. Mr. Griffin then offered to read from the direct examination of Dr. Berens, which offer was refused. Mr. Griffin then offered to read from the cross-examination of Dr. Berens, which offer was also refused. Mr. Griffin then stated that he would cease to offer anything.

"THE COURT: All right. The record will show that counsel for the plaintiff at this time has refused to offer any more evidence. Is that it? . . . All right, Mr. Parr, you may move if you will. MR. PARR: If the Court please, at this time, the claimant having produced all of its evidence, the department moves for a dismissal, or in lieu thereof an instruction to the jury to affirm the procedure of the department. The burden is upon the claimant to establish all essential things."

At this point the jury was excused, and Mr. Griffin asked the following question:

"MR. GRIFFIN: May I, in all deference to the Court, inquire why you refused to let me read the testimony? THE COURT: On the theory it is their evidence and not yours, and it is up to you to make out your case."

Then followed a further colloquy between the court and counsel, after which Mr. Parr made the following motion:

"We move for a dismissal on the ground that the plaintiff has the burden of proof and for the reason that the department's decision is *prima facie* correct, and the burden of proof being on the plaintiff, the plaintiff has not sustained that burden of proof. It hasn't proven any aggravation whatsoever."

At this time Mr. Donley made the following motion:

"Now, if the Court please, the employer, the Weyerhaeuser Timber Company, moves to dismiss this case on the ground and for the reason that there is in the record no competent medical testimony showing any aggravation whatever, and that the lay testimony in support of aggravation, which is only that of the plaintiff himself, shows affirmatively by his own testimony that there was no aggra-

vation whatsoever insofar as ability to work is concerned. For that reason, the case falls completely for want of proof."

After argument by counsel, the court granted the motion to dismiss. The jury was then called in and informed that the case had been ended by the action of the court. On February 21, 1944, the court entered a judgment of dismissal, after a motion for new trial had been made and denied. Claimant has appealed to this court from the judgment entered.

The assignments of error are: (1) In considering and sustaining objections made for the first time in the superior court, and in striking competent evidence; (2) that the court abused its judicial discretion in denying to appellant a continuance so that he might secure exhibits of material value from Olympia, where they were left without fault of appellant; (3) in sustaining objection to the testimony of the physician who was qualified to answer questions and give his opinion as to appellant's condition and the extent of his present permanent partial disability, and in striking from the record the testimony of such physician; (4) in refusing to allow appellant to read to the jury the evidence given by witnesses called by the department, and in suppressing the cross-examination when the employer offered to waive same.

In order that we may have in mind the main issue involved on this appeal, we desire to state that after counsel for appellant had called his first witness, who was claimant, it was specifically stated by Mr. Cummins that the only issue was aggravation between the time the claim was closed (September 28, 1939) and the time appellant applied to reopen the claim (August 16, 1942). Mr. Gershon, at that time representing appellant, agreed, stating, however, that if the issue of aggravation was met he was then entitled to prove the extent of appellant's disability.

██ It would perhaps be well to have in mind some of the rules announced by this court relative to claims for aggravation. We start with the proposition that the burden of proof is upon the party attacking the decision of the joint

board. *Reid v. Department of Labor & Industries,* 1 Wn. (2d) 430, 437, 96 P. (2d) 492. In that case, we stated:

"It is a condition prerequisite to the reopening of a claim for additional compensation by reason of aggravation of *disability* that there be a determination as to the disability and the rate of compensation to be awarded therefor, and the further condition *that there be a change in the claimant's condition since that determination.*" (Italics ours.)

In *State ex rel. Stone v. Olinger,* 6 Wn. (2d) 643, 647, 108 P. (2d) 630, we stated:

"In considering cases of 'aggravation,' following a classification of 'permanent partial disability,' this court has always proceeded upon the principle that 'aggravation,' as that term is used in Rem. Rev. Stat., § 7679 [P. C. § 3472] (h), has reference to an *increase of disability* occurring *after* a claim has been closed. . . .

"There can be no proper award for 'aggravation' of a permanent partial disability unless it appears (1) that the condition of the injured workman has previously been determined to have reached a fixed state, (2) that a rate of compensation was established for such disability, (3) that the claim was closed on that basis, and (4) that an *increase of disability* has been found to have occurred *after the date of such closing.*" (Italics ours.)

The only testimony offered by appellant before the joint board which could have any bearing on the claim of aggravation was the testimony of claimant himself and Dr. Rickards. All of that testimony is now before us in the record certified to the trial court by the joint board. Appellant also offered two X-ray pictures taken by Dr. Rickards at the time he examined appellant. Reference will be made later to the X-ray pictures.

We shall first discuss the challenge to the sufficiency of appellant's evidence to prove aggravation, made by counsel for the department and the employer at the time counsel for appellant had read into the record the testimony of his witnesses and had stated he would cease to offer anything.

We may say here that we are of the opinion the trial court committed no error in refusing to permit appellant, as part of his case in chief, to read to the jury the tes-

timony of Dr. Jacobson or Dr. Berens, the department's witnesses.

In discussing the motions of the department and the employer, it will be understood that we have considered all the testimony of appellant, Mr. Watkins, and Dr. Rickards, for the purpose of determining whether or not the trial court was justified in concluding as a matter of law that appellant had failed to prove aggravation, and therefore there was nothing to submit to the jury.

In so far as this cause is concerned, Dr. Rickards testified he examined claimant on November 12, 1942, the day before he was called to testify. The doctor did not purport to have any personal knowledge of the injury involved in this case, or appellant's condition at the time his claim was closed on September 28, 1939, or at the time appellant petitioned to reopen the claim on August 16, 1942. In other words, the doctor's first and only contact with appellant relative to the claim here under consideration was on November 12, 1942, some four months after appellant's petition to reopen the claim had been filed. The doctor, after being qualified as an expert, testified to the history of this case as given to him by appellant on November 12th. Nowhere in the history of the case as related by appellant to the doctor did appellant attempt to state what his condition was on September 28, 1939, or what it was on August 16, 1942, other than that he had been having more trouble with his back and arms, and pains through the back of his head for the last two or three months. The doctor testified he examined appellant, and from such examination found:

"He is 6 feet tall. He weighs 175 pounds. His teeth are fair, and his tonsils are small. Blood pressure 112/80. Heart and lungs are normal. He has a slight cough that I think is nothing more or less than a cigarette cough. His lungs don't present any form of disease. The skin is very tender and sensitive to touch over the scar in the right of his head. In fact, both sides are tender. There is pain and tenderness down his neck and down between his shoulders. There is pain and tenderness. There is not limitation of motion, but is stiff when he does move between the shoulders. There is no evidence of paralysis. There is a

two inch scar over the right temple and a smaller scar over the left temple."

The doctor further testified he had X-ray pictures taken of the dorsal and cervical spine; that no pathology was noted in the cervical spine, but that the dorsal showed what had apparently been a fracture of the proximal surface, the anterior proximal surface of the fourth dorsal.

Two X-ray pictures were then identified by the doctor, marked by the examiner for identification as exhibits 1 and 2, and then offered in evidence. Mr. Donley objected to their introduction before the examiner on the ground that, at that time, there was no evidence of aggravation, and no foundation laid, and no connection to the alleged injury. When the cause came on for hearing before the court, these X-ray pictures could not be found in the record before the court. Counsel for appellant contended they had been admitted and should be in the file, and counsel for the department stated that the pictures had apparently not been left with the examiner. It was for the purpose of going to Olympia to see if these pictures could be found that counsel for appellant asked for a continuance, referred to in his assignment of error No. 2.

Counsel for appellant then asked the doctor the following question:

"Doctor, assuming that this man was injured, as he related to you, on March 26, 1937; that thereafter he returned to work November of 1940 for about a month and then was unable to do the work and was second loading, or rather heavy work, and then in approximately April, 1941, went back to work and kept working, except for intervening times when he was off work due to *another injury,* and that since the closing of his claim in September of 1939 and, secondly, of his returning to work, his upper back continued to become considerably worse, and that his entire condition became worse, so that he was led to reopen or apply to reopen his case in August of 1942, and taking into consideration your examination, I will ask you, Doctor, what your opinion is on the issue of aggravation in this case between the *date of closing in September—September 28, 1939, I believe, and the date of application to reopen on August 18, 1942."* (Italics ours.)

It will be noticed that, in the question propounded, counsel for appellant himself fixed the dates between which he claimed there had been an aggravation of appellant's disability, namely, September 28, 1939, and August 16, 1942.

It may be stated here that Dr. Rickards testified that he examined claimant in July, 1942, for a broken leg claimant sustained in 1941; that he got no history of any back or arm complaint at that time; that it was for a separate accident that he examined claimant at that time.

After counsel for appellant had asked the doctor what we shall refer to as the hypothetical question, Mr. Donley made the following objection:

"I object on the grounds and for the reason the witness has not shown himself qualified to testify on the issue of aggravation because he had not seen the man prior to or at the time of the closing in 1939, and therefore, he is in no position to give an opinion as to whether or not there was an aggravation."

The examiner also interposed an objection to the question.

"Q. Will you answer the question? A. *From the history of the case and when [what] he told me* I believe there has been an aggravation of that case, and I think it has been from the history of recent date as stated in my findings."

■ Under the decisions of this court, it is apparent that Dr. Rickards had no basis upon which to form an opinion that appellant's condition as it existed on September 28, 1939, and as it was determined to be at the time his claim was closed, had become aggravated due to the original injury, for which he had already been compensated. The doctor testified as to appellant's physical condition at the time he examined him on November 12, 1942, and what the two X-ray pictures taken at that time showed, but the doctor had absolutely no way of telling what appellant's condition was on September 28, 1939, or, for that matter, on August 16, 1942, at the time appellant made application to reopen his claim for aggravation, except as gathered from the subjective symptoms related to him by appellant. This being true, the doctor had no basis upon which to make a comparison between appellant's condition at the time the

claim was closed and his condition at the time the doctor examined him, and, therefore, no basis for an opinion that there had been an aggravation of appellant's disability since the claim was closed.

If Dr. Rickards had had a proper basis upon which to form an opinion as to appellant's disability as a proximate result of the injury at the time the claim was closed, and a proper basis for determining that there had been an aggravation of disability between the time the claim was closed and the time appellant made application for reopening the claim, then his testimony as to the condition he found appellant to be in at the time he examined him would be competent for the purpose of making a comparison with the condition of appellant at the time his claim was closed; and if the doctor's examination indicated that the condition, as determined by the closing order and award, had become aggravated, then he would be in a position to testify as to the extent of such aggravation, if any, and the additional amount of permanent partial disability, if any, to which the claimant, in his opinion, was entitled. However, until the doctor had a proper basis upon which to form an opinion as to appellant's disability at the time of the closure order, his testimony as to the man's condition at the time he examined him on November 12, 1942, could have no bearing on the question of aggravation, as the doctor would have no possible way of knowing or forming an opinion as to whether or not the condition in which he found claimant was any different than the claimant's condition at the time the claim was closed, or whether or not the physical condition of the claimant, as revealed by such examination, was due to or caused by something other than the original injury.

We are satisfied that appellant's testimony shows nothing upon which a claim for aggravation could be based, other than subjective symptoms—that appellant had become worse—that he had pain; in other words, appellant's testimony shows no objective symptoms which have developed since his claim was closed, from which it could be

contended there was any aggravation of disability due to, or as a result of, the original injury.

Dr. Rickards, then, had only such subjective symptoms in addition to his own examination as a basis for his opinion that there was aggravation. We stated in *Cooper v. Department of Labor & Industries,* 20 Wn. (2d) 429, 433, 147 P. (2d) 522:

"The only medical testimony—it was admitted over objection of counsel for appellant—offered on behalf of respondent was that of a physician who only saw respondent once and that was March 29, 1942, when he examined respondent. [This was some four years after the claim was closed and six years after the injury.] That physician, solely on the basis of the statements of respondent respecting the pains he was undergoing, and that he was 'worse than he was when the claim was closed' in 1938, gave as his opinion that respondent's condition since the claim was closed had become aggravated.

"There is no evidence of even one objective symptom on which to base an opinion that, since respondent's claim was closed, his physical condition had become aggravated due to the injury for which he had already been compensated. Respondent's physician based his opinion as an expert upon subjective symptoms found, they being the things told him March 29, 1942, by respondent while being examined by the physician for the purpose of testifying as an expert witness. The examination was not for the purpose of treatment. Such things are none the less hearsay when they come from a physician than if from a layman. A physician may not base an opinion as to causation of a physical condition on subjective symptoms and self-serving statements.

"The testimony of respondent that he was worse and that he was suffering pains is not sufficient of itself to sustain his claim that his condition had become aggravated since his claim was closed. *Stevich v. Department of Labor & Industries,* 182 Wash. 401, 47 P. (2d) 32."

About one month after we decided the *Cooper* case, *supra,* we decided the case of *Roellich v. Department of Labor & Industries,* 20 Wn. (2d) 674, 148 P. (2d) 957, wherein we stated:

"In this particular case, Dr. Rickards made his apparently customary single examination on April 17, 1941. Whatever

may have been the fact as to the other seventy-nine cases, we are clear that more than one examination was necessary in order to give substantial testimony that the claimant's disability was aggravated during the period involved. Nor did the doctor specify what the nature of the aggravation was other than to say that the claimant was gradually growing weaker. Two examinations, at the very least, would have been necessary to testify to that from his own knowledge. That conclusion was based upon what the claimant told him. This was clearly demonstrated when claimant's counsel, near the close of his examination of Dr. Rickards, put to him the ultimate question which the jury was empaneled to answer:

" 'Q. Doctor, taking into consideration the history related to you and your examination, and from your examination, what is your opinion on the issue of aggravation in this case between the closing date of March 22, 1940, and his condition a year and approximately three months later on June 11, 1941? A. From his history of gradually growing weaker, which would be natural to expect, as I have stated, he is becoming gradually worse from his history of the case, that is my opinion from this form of an injury, it does become worse. It certainly doesn't improve.' "

Let us look at the ultimate answer of Dr. Rickards in the instant case:

"From the history of the case and when [what] he told me I believe there has been an aggravation of that case, and I think it has been from the *history* of *recent date* as stated in my findings." (Italics ours.)

■ We are satisfied there was *no* competent evidence in this case to sustain the claim of aggravation, and that the court properly granted the motion challenging the sufficiency of appellant's evidence to sustain the claim of aggravation.

■ In view of our conclusions, it becomes unnecessary to answer the assignments of error made by appellant. However, we will say, in regard to assignment of error No. 2, we would be inclined to agree with appellant that it was an abuse of discretion not to allow a continuance for the purpose of going to Olympia in order to determine whether or not an exhibit not in the files as certified was in the files of

the department in Olympia. But in the instant case, the production of these two X-ray pictures would have added nothing to appellant's evidence on aggravation. They were taken at the time Dr. Rickards made his examination on November 12, 1942, and would be in the same category as his testimony relative to such examination.

What we have said herein also indicates the reason for not specifically discussing appellant's other assignments of error.

For the reason herein assigned, the judgment of the superior court is affirmed.

DRIVER, C. J., BEALS, and ROBINSON, JJ., concur.

BLAKE, J., dissents.

---

March 26, 1946. Petition for rehearing denied.

[1]Reported in 166 P. (2d) 173.