[No. 31763. Department One. January 31, 1952.]

SAM KRESOYA, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.*[1]

[1]Reported in 240 P. (2d) 257.

*Walthew, Gershon, Yothers & Warner,* for appellant.

*The Attorney General* and *James J. Krinbring, Assistant,* for respondent department of labor and industries.

GRADY, J.—The appellant brings this case here for a review of a judgment of the superior court dismissing his appeal from an order of the department of labor and industries denying him additional compensation based upon aggravation of the original injury he sustained while engaged in extrahazardous employment.

On March 18, 1942, appellant sustained an injury to his back caused by lifting a heavy object. His claim was allowed by the department to the extent of fifty per cent permanent partial disability, and was closed June 3, 1944.

On October 6, 1945, appellant made application to have his claim reopened and that he be given an award for aggravation of his original injury. Hearings were held by the joint board May 29, 1946, June 6, 1947, August 31, 1948, and April 8, 1949.

The record on appeal to the superior court, in so far as the questions now presented are concerned, consisted of the testimony of appellant and Dr. L. E. Williams, a physician. At the commencement of the trial, respondents requested the court to make rulings on certain interrogatories propounded to Dr. Williams, their theory being that some of his testimony was not competent. This procedure was followed. The court sustained so many of the objections made, and in effect ruled out so much of the testimony given by the doctor, that it reached the conclusion appellant had not proven his claim of aggravation of his original injury, and accordingly granted a motion for a nonsuit.

Dr. Williams stated his field of activity was orthopedic surgery; that such field embraced the treatment of back injuries and those complicated by arthritis, and that in the treatment of a large number of cases he had observed the progress of disabilities following back injuries. Also that he had occasion to rate permanent partial disability, both for the department and claimants.

In May, 1947, Dr. Williams examined appellant. This was the first time the parties had met, and the examination was made for the purpose of enabling the doctor to be a witness at one of the hearings. He secured from appellant a history of his original injury, as well as his work history, the treatment received for the former and the progress of his condition after his claim was closed June 3, 1944. Appellant informed the doctor his back had become increasingly worse and he had been unable to follow any gainful occupation. In the language used by the doctor the claimant told him he had increased pain in the lumbosacral area and increasing radiation down the lower extremities. The doctor gave appellant a physical examination, from which he was able to make the following positive findings: All the reflexes of appellant were present and normal; the measurements of his lower extremities were equal in length and circumference; as he stood erect there was a marked limitation of motion of the lumbar and lumbosacral spine—the juncture of the lumbar spine with the pelvis. The doctor found that when appellant bent forward it was with some difficulty, and that there were muscle spasms when his fingers were eighteen inches to twenty inches from the floor; and when appellant took such position it was necessary to help straighten himself by putting his hands on his knees; that lateral and rotary motions of the spine were limited by better than fifty per cent. The spine tests were positive.

In testing ability to raise the legs, the doctor found appellant could do so to about sixty-five per cent with knee extended. This action produced a pain and muscle spasm in the lumbosacral area. The doctor explained that the muscle spasm was produced in the lumbar area, and in making tests, pain was apparent in the lower part of the back; that the muscles would tighten up, causing the pelvis to involuntarily rise when the patient was on a table; that when this occurred the patient complained of pain. The doctor stated that a muscular spasm was a protective mechanism where the muscles tightened up to prevent motion in the

painful area, and that this was made evident by the muscle bulging and the consistency of the muscle of contraction. He said that this was an objective finding, and corroborated the appellant's complaint of pain in that region. He also stated that the back tests he made were objective findings of pathology. He made tests by both active and passive motion and explained that the former were motions which a patient makes at the direction of the examiner, and passive were those performed by the examiner when the patient was relaxed. He stated the findings of passive limitation of motion was objective.

The doctor made a diagnosis of lumbosacral strain, osteo-arthritis of the lower lumbar spine and sacroiliac, and a chronic soft tissue inflammatory reaction about the lumbo-sacral joint. His diagnosis of the legs of appellant was radiation of pain down the sciatic nerve due to muscle spasm. The doctor stated he had examined the X-ray pictures contained in the departmental files and explained what was shown thereby. He found an increase in the bony changes, calcification of the ligament and an inflammatory reaction about the lumbosacral area, and a progress of arthritis after the closing of the claim. He was of the opinion there had been considerable increase in the osteo-arthritis which involved the lumbosacral joint and the joint between the fourth and fifth lumbar bodies, and such increase had taken place between 1943 and 1945. The doctor was of the opinion, based upon the history he got from appellant, the X-ray pictures, his examination, and from his general experience with similar cases, that the condition of appellant became aggravated after his claim was closed in June 1944. He considered the X-ray evidence in the lateral view of the spine was rather conclusive on that question. He rated the disability of appellant as a result of the injury he originally received as permanent.

We have set forth somewhat in detail the facts as de-veloped by the testimony of Dr. Williams, because it is contended by respondents that he based his conclusion that the disability of appellant had become aggravated since his claim was closed and that it was attributable to his original

injury upon wholly subjective symptoms. It is argued that, in such a case, the proof of aggravation is insufficient, and therefore the trial court was correct in sustaining the objections made to interrogatories propounded to Dr. Williams when he was a witness. Respondents cite *Cooper v. Department of Labor & Industries,* 20 Wn. (2d) 429, 147 P. (2d) 522; *Roellich v. Department of Labor & Industries,* 20 Wn. (2d) 674, 148 P. (2d) 957; *Larson v. Department of Labor & Industries,* 24 Wn. (2d) 461, 166 P. (2d) 159, and *Petersen v. Department of Labor & Industries,* 36 Wn. (2d) 266, 217 P. (2d) 607.

We decided in those cases that whether the condition of an injured workman had become aggravated since his claim had been closed, and whether such aggravation was attributable to his original injury, could be established only by medical testimony, and that a claim for aggravation is not sustained by such testimony if it is based upon subjective symptoms *alone.* We have also decided that if the opinion of a physician is not based *wholly* upon subjective symptoms related to him by the claimant at the time of his examination, the latter rule does not apply. *Anderson v. Department of Labor & Industries,* 23 Wn. (2d) 76, 159 P. (2d) 397; *Hastings v. Department of Labor & Industries,* 24 Wn. (2d) 1, 163 P. (2d) 142; *Solberg v. Department of Labor & Industries,* 25 Wn. (2d) 156, 169 P. (2d) 701; *Spalding v. Department of Labor &Industries,* 29 Wn. (2d) 115, 186 P. (2d) 76.

In *Knowles v. Department of Labor & Industries,* 28 Wn. (2d) 970, 184 P. (2d) 591, it was contended that every element in a case of aggravation must be proved by medical testimony and be based on objective findings. We not only said that we had never so held, but made it plain that certain testimony of lay witnesses could be considered, and that where medical testimony established by objective findings the existence of such factors as inflammation and pain in the sacroiliac region, limited flexion and extension in the spine, and muscle spasm, the expert might tie the two together and thereby make complete the links in the causal chain to connect the aggravation with the original injury.

We have not overlooked the fact that in the *Spalding* case, *supra,* the principal medical witness called by the claimant had been the attending physician and that such physician is usually in a much better position to draw conclusions than a physician who makes one examination of a claimant for the purpose of giving expert testimony. We cite the case, however, as illustrative of the idea that an examining physician may take into consideration the history of the case given by the claimant along with objective symptoms.

In order that Dr. Williams might acquire testimonial knowledge of the condition of appellant, it was necessary that he obtain from him some of the history of the case. He had the benefit of X-ray pictures. He discovered by them and the tests he made the existence of many objective symptoms. He then became able to form an opinion that the condition of appellant caused by the original injury had become aggravated.

We adhere to the rule adopted in the *Cooper* case, *supra,* and other like cases, and also the rules adopted with reference to the necessity of medical testimony. The rule that an expert medical witness may not base his opinion upon subjective symptoms alone is designed to protect the industrial insurance fund against unfounded claims of aggravation. If such claims could be established by the testimony of a physician who based his opinion entirely upon what the claimant told him, it would open the door to fraudulent claims, as well as those mistakenly made in good faith. A claimant might honestly believe his subsequent condition arose out of his original injury, but this is a medical question and an opinion thereon must be derived from sources other than the claimant's statement. These protective rules, however, must not be applied to situations where there is a combination of subjective and objective symptoms, which an expert may be able to tie together, and we think this is made very clear by a careful reading of the cases we have cited. The physician must of necessity obtain some history from the claimant, and has a right to make proper use of it in connection with objective findings which he as an expert

may make by an examination, the making of tests, the use of X-ray pictures and other proper data.

■ In view of the foregoing, we conclude the court was correct in ruling out *as evidence* to be considered by the jury what appellant stated to Dr. Williams with reference to the progress of his original injury; also the opinion expressed by the doctor based upon history and work record. This was not responsive to the question asked, and included an element of hearsay. The evidence sought by the original question is to be found in other parts of the doctor's testimony. We have made a careful study of the other rulings made by the court adverse to appellant, taking into consideration the nature of the objections made, the interrogatories themselves and the responses given, and are of the opinion the court was in error in making such rulings. There seems to have been some confusion created by assuming the doctor was relying wholly on what the appellant told him when he responded to some of the questions asked, and that to answer some of them the doctor would have to speculate. However, our interpretation of the testimony of the doctor when viewed in its entirety indicates that although he secured from appellant his injury and work history he was able to corroborate the former, and inferentially the latter, by matters objective.

The judgment is reversed and the case remanded for a new trial.

SCHWELLENBACH, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.

---

April 8, 1952. Petition for rehearing denied.