IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| TERA L. HENDRICKSON, | ) | No. 75475-1-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| DEPARTMENT OF LABOR AND | ) | |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | FILED: January 29, 2018 |

SCHINDLER, J. — Under the Industrial Insurance Act, Title 51 RCW, an injured worker can file an application to reopen a claim to obtain additional medical treatment for aggravation of the injury.[1] Established case law requires the worker to present some objective medical evidence that the injury has worsened since the closure of the claim. In 2007, Tera Hendrickson suffered a mid- and low-back injury while working as a truck driver. In 2012, the Washington State Department of Labor and Industries closed the claim with a permanent partial disability award for a category 4 permanent dorso-lumbar and/or lumbosacral impairment. In September 2013, Hendrickson filed an application to reopen her claim. Substantial evidence supports finding Hendrickson did not present objective medical evidence that the injury worsened since the department closed the

---

[1] RCW 51.32.160.

claim. We affirm the superior court decision upholding dismissal of the application to reopen.

## FACTS

Tera Hendrickson worked for Staffmark LLC-Pacific as a truck driver. On October 9, 2007, Hendrickson "heard and felt a pop" in her middle and lower back when she stepped out of a truck at work. On October 19, Hendrickson filed a claim for disability benefits. The Washington State Department of Labor and Industries (Department) allowed the claim and paid benefits. Hendrickson underwent back surgery and received several rounds of physical therapy, cortisone injections, and laser treatments.

Hendrickson continued to have "pain in her head, neck, mid-back, and low back, as well as sciatic pain . . . and numbness." When Hendrickson saw orthopedic spine surgeon Dr. Michael Martin on April 16, 2012, she reported "ongoing pain all over." Dr. Martin diagnosed Hendrickson with "postlaminectomy syndrome lumbar spine, sprain-strain, and cervical radiculopathy."

On May 10, 2012, the Department closed her claim with a permanent partial disability award for "category 4 permanent dorso-lumbar and/or lumbosacral impairments."[2]

---

[2] WAC 296-20-280(4) defines a category 4 permanent dorso-lumbar and lumbosacral impairment as follows:

> Mild low back impairment, with mild continuous or moderate intermittent objective clinical findings of such impairment, with mild but significant X-ray findings and with mild but significant motor loss objectively demonstrated by atrophy and weakness of a specific muscle or muscle group.

Hendrickson moved to Hawaii and in May 2013, enrolled in school to complete her bachelor's degree. In July 2013, Hendrickson moved back to Washington and started working for Freight Northwest, driving a truck with flatbed trailers.

On September 25, 2013, Hendrickson filed an application to reopen her industrial injury claim. Hendrickson saw Dr. Martin on January 6, 2014. Hendrickson "was again complaining of pain . . . 'all over.' " Dr. Martin examined Hendrickson and ordered "repeat [MRI[3]] scans of her cervical and lumbar spine[ ]." The 2014 MRI scans were "essentially unchanged from the scans performed previously in the cervical spine in 2011 and the lumbar spine in 2012."

On February 12, 2014, the Department denied the application to reopen the claim. The "Notice of Decision" states, "The medical record shows the conditions caused by the injury have not worsened since the final claim closure." Hendrickson filed a motion for reconsideration. The Department issued a Notice of Decision affirming denial of the application to reopen.

Hendrickson appealed the decision to the Washington State Board of Industrial Insurance Appeals (Board). An industrial appeals judge (IAJ) held a hearing. Hendrickson, her daughter, and a friend of Hendrickson's testified. Hendrickson submitted the deposition testimony of Dr. Martin. The IAJ admitted the deposition testimony into evidence.

Dr. Martin testified that when he saw Hendrickson on January 6, 2014, he performed a "review of symptoms" and a physical examination. The review of symptoms was "unremarkable." The physical examination showed "[m]otor strength was normal in the upper and lower extremities" but "[s]ensation was decreased in the

---

[3] Magnetic resonance imaging.

3

C6[4] dermatome on the left, the C7 dermatome on the left, the C8 and T1[5] dermatomes also on the left." Dr. Martin ordered repeat MRI scans.

Dr. Martin compared the results of the January 17, 2014 MRI scans with the 2011 and 2012 MRI scans. Dr. Martin testified that "the problems indicated by the MRI" are "considered objective." Dr. Martin testified the MRI results were "essentially unchanged." Dr. Martin testified the January 2014 MRI showed "multilevel cervical spine disk and facet degeneration" that was "similar when compared" to the August 18, 2011 MRI.

> Q What, if anything, did you learn from those [2014] scans?
> A They were essentially unchanged from the scans performed previously in the cervical spine in 2011 and the lumbar spine in 2012.

Dr. Martin said Hendrickson "had similar symptoms for several years dating from [the] injury of 2007." Dr. Martin testified on "a medically more-probable-than-not basis," Hendrickson was "feeling worse."

> Q . . . In this case, on a medically more-probable-than-not basis, do you believe that Ms. Hendrickson's symptoms are worse?
> A Yes, she is feeling worse.

Dr. Martin stated, "I cannot disagree" with the conclusion of independent medical examiner Dr. James Kopp that there was " 'nothing on the physical examination or in the MRI studies that would indicate criteria that would qualify for objective evidence of reopening.' " Dr. Kopp concluded, in pertinent part:

> "The reopening application indicates we need to determine that she is worse than a Category 4, which apparently has been awarded for her dorsolumbar and lumbosacral impairment. There is nothing on the physical examination that would suggest worse than a Category 4. . . . While we sympathize that the claimant has ongoing discomfort, she is

---

[4] Cervical vertebra 6.
[5] Thoracic vertebra 1.

functional and is working as a truck driver, and there is nothing on the physical examination or in the MRI studies that would indicate criteria that would qualify for objective evidence of reopening."

When asked what evidence "supports reopening of the claim," Dr. Martin testified, "I believe that she subjectively feels worse." Dr. Martin testified that in his opinion, the "conditions related to the October of 2007 industrial injury have worsened . . . [s]ubjectively." Dr. Martin conceded that there were "no objective findings of worsening" and that his opinion was based on her "subjective complaints of . . . pain."

Q    There are no objective findings of worsening in this case, are there, Doctor?
A    No.
Q    They're all based on subjective complaints of essentially pain that she is experiencing?
A    Yes.

At the conclusion of the evidence presented by Hendrickson, the Department filed a motion to dismiss the appeal to reopen the claim. The Department argued Hendrickson did not present any objective medical evidence that her condition had worsened. Hendrickson argued her subjective complaints of increased pain were "supported by the objective evidence of the MRI."

The IAJ granted the motion to dismiss the appeal. The IAJ found Hendrickson did not present any "objective evidence of worsening." The IAJ issued a "Proposed Decision and Order." The June 8, 2015 Proposed Decision and Order states, in pertinent part:

Michael Martin, M.D., testified that he is an orthopedic surgeon, certified in his field. He has been Tera Hendrickson's treating physician since the mid-1990s. . . .

When seen in April 2012, Ms. Hendrickson complained that she had ongoing pain all over. When seen in January 2014, she again complained that she had pain all over. . . . Dr. Martin ordered scans of her cervical and lumbar spine. They were essentially unchanged from the

scans of her cervical spine in 2011 and lumbar spine in 2012. Some of her symptoms fit with the findings on those imaging studies.

Ms. Hendrickson's diagnoses were postlaminectomy syndrome lumbar spine, strain/sprain, and cervical radiculopathy, related to her October 9, 2007 industrial injury. She had similar symptoms for several years dating from that injury of 2007.

Comparing Ms. Hendrickson's cervical MRIs of August 2011 and January 2014, Dr. Martin doesn't see much difference. [Hendrickson] had increased subjective complaints in January 2014, but it isn't unusual for symptoms to worsen without any demonstrable change on imaging studies. Her worsening symptoms fit the pathology on her imaging studies. By January 2014, her diagnoses were unchanged, but she was more symptomatic. Dr. Martin agrees that there is nothing on examination suggesting an impairment worse than the Category 4 previously awarded for Ms. Hendrickson's dorsolumbar and lumbosacral impairment. But he believes that subjectively she feels worse. There are no objective findings of worsening in this case.

The IAJ rejected Hendrickson's argument that Dr. Martin's testimony supported finding "there is no way to objectively measure the progression of her injury-related condition." The IAJ found Dr. Martin "never said that. In fact, he compared MRIs" and found no "objective progression of her condition."

Medical testimony is required to show that there actually was a worsening or aggravation between the terminal dates. Lewis v ITT Continental Baking [Co.], 93 Wn.2d 1[, 603 P.2d 1262] (1979). It must be based at least in part on objective medical findings. Dinnis v. Department of Labor & Indus., 67 Wn.2d 654[, 409 P.2d 477 (1965)]. The exception is when there is no way to objectively measure the progression of a condition. In re Charles Lewis, [No.] 07 16483 [(Wash. Bd. of Indus. Appeals Oct. 10, 2008)]. Claimant suggests that Dr. Martin established that there is no way to objectively measure the progression of her injury-related condition. But Dr. Martin never said that. In fact, he compared MRIs to see if there was any objective progression of her condition, and he could find none. . . . We are left with nothing contrary to his conclusion that there are no objective findings of worsening in this case.

Hendrickson filed a petition for review of the Proposed Decision and Order with the Board. The Board adopted the Proposed Decision and Order as the "Decision and

Order of the Board" and denied the appeal. Hendrickson filed an appeal in superior court.

The superior court affirmed the decision of the Board. The court found Hendrickson "did not prove objective evidence of worsening of the conditions proximately caused by the October 9, 2007 industrial injury between May 10, 2012, and September 8, 2014" and affirmed the Department's denial of her application to reopen the industrial injury claim.

## ANALYSIS

Hendrickson contends substantial evidence does not support the finding that she did not prove objective worsening of her condition and the superior court erred in affirming the decision to dismiss the application to reopen her industrial injury claim.

The Industrial Insurance Act (IIA), Title 51 RCW, governs judicial review of the decision to deny the application to reopen the industrial injury claim. Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 179, 210 P.3d 355 (2009). In an appeal to superior court, the Board's decision is prima facie correct. RCW 51.52.115. The superior court acts in an appellate capacity and reviews the decision of the Board de novo solely on the evidence and testimony presented to the Board. Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5-6, 977 P.2d 570 (1999).

The Board decision is prima facie correct and the burden of proof is on the party challenging the decision. RCW 51.52.115; Spivey v. City of Bellevue, 187 Wn.2d 716, 729, 389 P.3d 504 (2017); Ruse, 138 Wn.2d at 5. The party challenging the decision must prove by a preponderance of the evidence "a prima facie case for the relief sought in such appeal." RCW 51.52.050(2)(a); Ruse, 138 Wn.2d at 5; Dep't of Labor & Indus.

v. Rowley, 185 Wn.2d 186, 206, 378 P.3d 139 (2016). The superior court may substitute its own findings and decision if it finds from a " 'fair preponderance of credible evidence' " that the Board findings and decision were incorrect. Ruse, 138 Wn.2d at 5[6] (quoting McClelland v. ITT Rayonier, Inc., 65 Wn. App. 386, 390, 828 P.2d 1138 (1992)).

Our review of the superior court decision is governed by RCW 51.52.140. RCW 51.52.140 states that an "[a]ppeal shall lie from the judgment of the superior court as in other civil cases." The statutory scheme results in a different role for this court than is typical for appeals from administrative decisions. Rogers, 151 Wn. App. at 180. Rather than sitting in the same position as the superior court, under the IIA, we review only " 'whether substantial evidence supports the trial court's factual findings and then review, de novo, whether the trial court's conclusions of law flow from the findings.' " Rogers, 151 Wn. App. at 180 (quoting Watson v. Dep't of Labor & Indus., 133 Wn. App. 903, 909, 138 P.3d 177 (2006)); Ruse, 138 Wn.2d at 5. Substantial evidence is evidence "sufficient to persuade a rational, fair-minded person that the finding is true." Cantu v. Dep't of Labor & Indus., 168 Wn. App. 14, 21, 277 P.3d 685 (2012); Potter v. Dep't of Labor & Indus., 172 Wn. App. 301, 310, 289 P.3d 727 (2012). We do not substitute our "judgment for that of the trial court," "weigh the evidence or the credibility of witnesses," or apply a new burden of persuasion. Davis v. Dep't of Labor & Indus., 94 Wn.2d 119, 124, 615 P.2d 1279 (1980); Rogers, 151 Wn. App. at 180-81; Cantu, 168 Wn. App. at 22. We review the record in the light most favorable to the party who prevailed in superior court. Harrison Mem'l Hosp. v. Gagnon, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002).

---

[6] Internal quotation marks omitted.

In granting a motion to dismiss under CR 41(b)(3), the court may weigh the evidence and make a factual determination that the plaintiff has failed to come forth with credible evidence of a prima facie case, or the court may view the evidence in the light most favorable to the plaintiff and rule as a matter of law that the plaintiff has failed to establish a prima facie case. In re Dependency of Schermer, 161 Wn.2d 927, 939, 169 P.3d 452 (2007); Rufin v. City of Seattle, 199 Wn. App. 348, 357, 398 P.3d 1237 (2017). Where the superior court enters findings, appellate review is limited to whether substantial evidence supports the findings and whether the findings support the conclusions of law. Schermer, 161 Wn.2d at 939-40.

After the Department makes a final determination and closes an industrial injury claim, the worker has up to seven years to file an application to reopen the claim for additional medical treatment or compensation for aggravation of the industrial injury. RCW 51.32.160(1)(a); Tollycraft Yachts Corp. v. McCoy, 122 Wn.2d 426, 432, 858 P.2d 503 (1993); Cantu, 168 Wn. App. at 19. RCW 51.32.160(1)(a) provides, in pertinent part:

> If aggravation . . . of disability takes place, the director may, upon the application of the beneficiary, made within seven years from the date the first closing order becomes final, or at any time upon his or her own motion, readjust the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payment.

Established case law requires the worker to present medical testimony of a causal connection based on "some objective medical evidence" that the injury "has

worsened since the initial closure of the claim."[7] Tollycraft Yachts, 122 Wn.2d at 432;[8] Phillips v. Dep't of Labor & Indus., 49 Wn.2d 195, 197, 298 P.2d 1117 (1956); Lewis, 93 Wn.2d at 3 ("Medical evidence—based at least in part on objective symptoms—must show that an aggravation of the industrial injury resulted in increased disability."); Dinnis, 67 Wn.2d at 656 ("In an aggravation case, the burden of proving a claimed disability to be greater on the last terminal date than on the first terminal date is upon the claimant; and to prevail he must produce medical evidence to that effect based, at least in part, upon objective findings of a physician."); Page v. Dep't of Labor & Indus., 52 Wn.2d 706, 709, 328 P.2d 663 (1958) (the extent of the disability at any relevant date must be determined by medical testimony and some objective evidence); Moses v. Dep't of Labor & Indus., 44 Wn.2d 511, 517, 268 P.2d 665 (1954) (To "establish a claim for an increase in an award as a result of the aggravation of a prior industrial injury, the burden is on the claimant to produce medical evidence, some of it based on objective findings, to prove that there has been an aggravation of the injury which resulted in increased disability."); Kresoya v. Dep't of Labor & Indus., 40 Wn.2d 40, 44, 240 P.2d 257 (1952)[9] ("[W]hether the condition of an injured workman had become aggravated since his claim had been closed . . . [can] be established only by medical testimony, and . . . a claim for aggravation is not sustained by such testimony if it is based upon subjective symptoms alone."); Felipe v. Dep't of Labor & Indus., 195 Wn. App. 908, 914,

---

[7] The requirement that the worker provide objective medical evidence does not apply "if the symptoms of a condition are exclusively subjective in nature." Felipe v. Dep't of Labor & Indus., 195 Wn. App. 908, 918, 381 P.3d 205 (2016); Price v. Dep't of Labor & Indus., 101 Wn.2d 520, 528, 682 P.2d 307 (1984) (objective medical evidence is not required in workers' compensation cases involving psychiatric disability because symptoms of psychiatric injury are necessarily subjective in nature). On appeal, Hendrickson does not argue that this exception applies.

[8] Emphasis omitted.

[9] Emphasis in original.

381 P.3d 205 (2016) ("case law requires the worker to support a request to reopen with some objective medical evidence").

The Supreme Court defines "objective symptoms" as "those within the independent knowledge of the doctor, because they are perceptible to persons other than a patient." Hinds v. Johnson, 55 Wn.2d 325, 327, 347 P.2d 828 (1959)); see also Felipe, 195 Wn. App. at 915. By contrast, "subjective symptoms" are "those perceived only by the senses and feelings of a patient. The doctor must be told of them because he cannot himself perceive them." Hinds, 55 Wn.2d at 327; see also Felipe, 195 Wn. App. at 915.[10]

In Kresoya, the Washington Supreme Court notes, "A claimant might honestly believe his subsequent condition arose out of his original injury, but this is a medical question and an opinion thereon must be derived from sources other than the claimant's statement." Kresoya, 40 Wn.2d at 45. But the medical expert "may be able to tie together" subjective and objective symptoms. Kresoya, 40 Wn.2d at 45. The physician "has a right to make proper use of [history from the claimant] in connection with objective findings which he as an expert may make by an examination, the making of tests, the use of X-ray pictures and other proper data." Kresoya, 40 Wn.2d at 45-46.

---

[10] WAC 296-20-220(1)(i) defines "objective physical or clinical findings" as "those findings on examination which are independent of voluntary action and can be seen, felt, or consistently measured by examiners." WAC 296-20-220(1)(j) defines "subjective complaints or symptoms" as "those perceived only by the senses and feelings of the person being examined which cannot be independently proved or established."

Hendrickson argues substantial evidence does not support finding she "did not prove objective evidence of worsening" of her industrial injury between May 10, 2012 and September 8, 2014.[11] Finding of fact 1.6 states:

> Ms. Hendrickson did not prove objective evidence of worsening of the conditions proximately caused by the October 9, 2007 industrial injury between May 10, 2012, and September 8, 2014.

Hendrickson claims subjective complaints verified by a doctor establishes a prima facie case to reopen an industrial injury claim. Hendrickson asserts that as in Wilber v. Department of Labor & Industries, 61 Wn.2d 439, 378 P.2d 684 (1963), the testimony of Dr. Martin established a prima facie case to reopen her claim because her subjective complaints were supported by the MRI scans. Hendrickson concedes the MRI scans taken before the claim closed in 2012 and the MRI scans in 2014 do not show any change. Hendrickson argues Wilber holds that "a claim could be re-opened where objective evidence was identical at the close of the claim as it was at the re-opening application." We disagree.

In Wilber, the undisputed medical evidence established Wilber's "fifth intervertebral disc ruptured." Wilber, 61 Wn.2d at 441. During periods of an acute attack, Wilber was "totally disabled" but during periods of remission, "he is able to get about." Wilber, 61 Wn.2d at 441. Doctors advised surgery to repair the ruptured disc. Because of conflicting medical opinions about success, Wilber did not undergo surgery for the ruptured disc. Wilber, 61 Wn.2d at 441. The Department closed the claim. Wilber, 61 Wn.2d at 440. Approximately eight months later, Wilber filed an application

---

[11] Hendrickson also argues the doctrine of liberal construction of the IIA resolves any factual conflict in her favor. The doctrine of liberal construction of the IIA "does not apply to questions of fact." Dep't of Labor & Indus. v. Ramos, 191 Wn. App. 36, 39 n.1, 361 P.3d 165 (2015); see Raum v. City of Bellevue, 171 Wn. App. 124, 155 n.28, 286 P.3d 695 (2012); Ehman v. Dep't of Labor & Indus., 33 Wn.2d 584, 595, 206 P.2d 787 (1949).

to reopen the claim. Wilber, 61 Wn.2d at 440. Wilbur's doctor testified that the "acute attacks had increased to the point where [Wilber] was practically immobilized and that the intervals when free of pain were less frequent." Wilber, 61 Wn.2d at 441. The doctor testified "unequivocally" that unless the ruptured disc was surgically corrected, it "would become progressively worse, and he advised surgery." Wilber, 61 Wn.2d at 442. Wilber's doctor also "expressed the unqualified opinion that, in periods of acute attack, a person suffering from the same affliction would be totally disabled," and Wilber's acute attacks were now more frequent and disabling. Wilber, 61 Wn.2d at 443, 441. The examining physician for the Department testified the "left Achilles reflex was decreased" and "is a significant finding in case of ruptured intervertebral discs," and Wilber's complaints of pain were "substantially objective." Wilber, 61 Wn.2d at 443.

The Department and the Board denied the application to reopen the claim. Wilber, 61 Wn.2d at 440. The superior court set aside a jury verdict in favor of Wilber. Wilber, 61 Wn.2d at 440. The Supreme Court reversed. The court held as a general rule, "[a] case may not be reopened if the physician's opinion is based solely upon what the workman related to him." Wilber, 61 Wn.2d at 446. But "[i]f, on the other hand, the injured workman's complaints can be verified by the symptoms disclosed by the physician's clinical examination, all requirements of proof are met." Wilber, 61 Wn.2d at 446. The court concluded Wilber's complaints of increased pain were supported by clinical examination that established increased disability from an unrepaired ruptured disc. Wilber, 61 Wn.2d at 446, 449.

> There is not a great deal of controversy respecting the facts. The application to reopen was provoked by a flare-up or acute symptoms which totally incapacitated appellant from any gainful employment. Indeed, the testimony of the physicians employed by the department for

the purpose of testifying, was that the history of cases of ruptured intervertebral discs was one of acute exacerbation and remission, and that the symptoms complained of by the appellant were those customarily disclosed in the treatment of cases of unrepaired ruptured intervertebral discs. The department's own physician witnesses testified that there was a lessening of the Achilles reflex in the left foot and that this was a classic symptom of a ruptured disc. It would be impossible to find a case in which the complaints of the injured workman were more completely confirmed by clinical examination than that disclosed by the present record.

Wilber, 61 Wn.2d at 449.

Here, unlike in Wilber, Hendrickson's subjective complaints of increased pain are not supported by any objective medical findings that her condition changed after the Department closed her claim. Dr. Martin's undisputed testimony establishes her symptoms remained the same and there was no change in the MRI scans taken before the claim was closed and after Hendrickson filed her application to reopen. Dr. Martin testified that Hendrickson's subjective symptoms "fit with the findings on the MRI scan." Dr. Martin said subjective symptoms "can worsen without any demonstrable changes on the imaging studies," but "[t]hey don't always." Dr. Martin testified that when he saw Hendrickson on April 16, 2012, just before the claim was closed, Hendrickson reported she was still "having ongoing pain all over." Dr. Martin stated that when he saw Hendrickson again on January 6, 2014, after she filed her application to reopen the claim, she was "again complaining of pain, quote, 'all over.' " Although Dr. Martin testified that on a more probable than not basis she "subjectively feels worse," Dr. Martin testified unequivocally that there were "no objective findings of worsening."[12]

Because Hendrickson did not produce any objective medical evidence that her industrial injury became worse after the Department closed the claim in May 2012,

---

[12] The record also does not support Hendrickson's argument that as in Wilber, she is "incapacitated." The record shows that in August 2014, Hendrickson took "another trucking position" working as the "night supervisor dispatch" and worked occasionally as a truck driver.

substantial evidence supports the superior court finding and the decision to dismiss her application to reopen the claim. We affirm the decision of the superior court.

WE CONCUR: