# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| OLABAMIJI M. IDOWU, JR. (DEC'D), | No. 87002-5-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | |
| Respondents. | |

FELDMAN, J. — The estate of Olabamiji M. Idowu Jr. (the Estate) appeals from the trial court's order granting summary judgment in favor of the Department of Labor and Industries (Department) regarding Idowu's claim for industrial insurance benefits under the Industrial Insurance Act (IIA), Title 51 RCW. Finding no error, we affirm.

Because the parties are familiar with the facts, we recite them only as necessary to explain our reasoning below. Idowu's claim arises out of a 2018 incident when a coworker assaulted him by striking his back while he was working at a childcare facility. He sought medical treatment and reported tenderness in the dorsal lumbar area. Medical imaging taken after the incident did not show evidence of an injury. Idowu was seen by multiple examiners and "ultimately

underwent a rehabilitative program and had several independent examinations." The record reflects "he did not feel he could return to his job of injury and apparently vocational services had been sought." Consequently, Idowu filed a claim with the Department for industrial insurance benefits.

In late 2021, while his claim still remained open, Idowu died when he was stabbed on a public bus. Thereafter, Idowu's claim has been litigated by the Estate.[1] A few days after Idowu's death, the Department accepted responsibility for the conditions diagnosed as "lumbar contusion" and provided industrial insurance benefits for *temporary disability*. Several months later, the Department closed Idowu's claim for *permanent disability* without an award noting, "it appears Mr. Idowu was not totally permanently disabled and treatment was not concluded to consider partial permanent impairment disability, therefore [the claim] is closed." The Estate appealed that decision to the Board of Industrial Appeals (Board), which affirmed the Department's decision, and then appealed the Board's decision to King County Superior Court, which affirmed the Board's decision. This timely appeal followed.

"In appeals under the IIA, we review the superior court's decision and apply the ordinary civil standards of review." *Peterson v. Dep't of Labor & Indus.*, 17 Wn.

---

[1] Addressing payment of an award where, as here, a claimant dies for reasons unrelated to the industrial injury, RCW 51.32.040(2)(a) states: "If any worker suffers (i) a permanent partial injury and dies from some other cause than the accident which produced the injury before he or she receives payment of the award for the permanent partial injury or (ii) any other injury before he or she receives payment of any monthly installment covering any period of time before his or her death, the amount of the permanent partial disability award or the monthly payment, or both, shall be paid to the surviving spouse or the child or children if there is no surviving spouse. If there is no surviving spouse and no child or children, the award or the amount of the monthly payment shall be paid by the department or self-insurer and distributed consistent with the terms of the decedent's will or, if the decedent dies intestate, consistent with the terms of RCW 11.04.015."

App. 2d 208, 217, 485 P.3d 338 (2021); RCW 51.52.140. Here, the trial court granted summary judgment, which is governed by "'a burden-shifting scheme.'" *Welch v. Brand Insulations, Inc.*, 27 Wn. App. 2d 110, 114, 531 P.3d 265 (2023) (internal quotation marks omitted) (quoting *Bucci v. Nw. Tr. Servs., Inc.*, 197 Wn. App. 318, 326, 387 P.3d 1139 (2016)). "The moving party bears the initial burden 'to prove by uncontroverted facts that there is no genuine issue of material fact.'" *Id.* at 115 (quoting *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977)). If the moving party meets this burden, then the burden shifts to the nonmoving party to produce "'specific facts evidencing a genuine issue of material fact for trial.'" *Id*. (quoting *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995)). "This court reviews a motion for summary judgment de novo, construing all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party." *Blue Diamond Grp., Inc. v. KB Seattle 1, Inc.*, 163 Wn. App. 449, 453, 266 P.3d 881 (2011).

For "dorso-lumbar and lumbosacral impairments," at issue here, WAC 296-20-280 describes eight categories of impairment, where category 1 is least severe and category 8 is most severe. Idowu claimed a category 2 impairment, which the IIA defines as follows: "Mild low back impairment, with mild intermittent *objective clinical findings* of such impairment but no significant X-ray findings and no significant objective motor loss. Subjective complaints and/or sensory losses may be present." WAC 296-20-280(2) (emphasis added). As can be seen, a category 2 impairment requires "objective clinical findings." Thus, when rating such impairment, "reliance is primarily placed on objective physical or clinical findings

that are independent of voluntary action by the worker and can be seen, felt or consistently measured by examiners." WAC 296-20-19030.

Our Supreme Court has explained the importance of the "objective clinical findings" requirement in industrial injury cases:

> The rule that an expert medical witness may not base his opinion upon subjective symptoms alone is designed to protect the industrial insurance fund against unfounded claims of aggravation. If such claims could be established by the testimony of a physician who based his opinion entirely upon what the claimant told him, it would open the door to fraudulent claims, as well as those mistakenly made in good faith. A claimant might honestly believe his subsequent condition arose out of his original injury, but this is a medical question and an opinion thereon must be derived from sources other than the claimant's statement.

*Kresoya v. Dep't of Labor & Indus.*, 40 Wn.2d 40, 45, 240 P.2d 257 (1952). Accordingly, where "[t]here is no evidence of even one objective symptom," a claim for industrial insurance benefits is properly dismissed. *Cooper v. Dep't of Lab. & Indus.*, 20 Wn.2d 429, 433, 147 P.2d 522 (1944).

Applying these legal principles here, the Department plainly met its initial burden of production on summary judgment. The Department argued there was an absence of objective evidence supporting a disability award.[2] The Department noted the Estate's only medical expert, Dr. Thomas Degan, characterized the low-back symptoms referenced in Idowu's medical reports as "objective" merely because Idowu told medical providers that he experienced "consistent tenderness in the lower lumbar area" and "muscle tightness" "over a period of time" concluding,

---

[2] The Department also argued the Estate had not established Idowu's condition was "permanent" because it had not reached "maximum medical improvement" before Idowu's death and could therefore be denied on that basis as well. Because the lack of objective medical findings is sufficient to affirm the trial court's ruling granting summary judgment in favor of the Department, we need not address the Department's permanency argument.

"I think . . . it can be characterized as an objective finding." The Department further noted that when Dr. Degan was cross-examined as to whether he relied on any objective clinical findings of a category 2 impairment, as opposed to Idowu's own statements, he advanced none. This was sufficient to shift the burden of production to the Estate.

Where, as here, the moving party satisfies their initial burden and the burden of production shifts to the nonmoving party, that party "cannot rely on 'speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value.'" *M.E. v. City of Tacoma*, 15 Wn. App. 2d 21, 31-32, 471 P.3d 950 (2020) (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn. 2d 1, 13, 721 P.2d 1 (1986)). Despite this burden shifting framework, the Estate's brief in opposition to the Department's summary judgment motion is conclusory and unsupported by objective evidence. The Estate attempted to recast the report of Idowu's medical expert as more than mere conjecture lacking a factual basis by pointing to Idowu's complaint that he experienced tenderness and "tightness over a prolonged period." That is insufficient to establish *objective* clinical findings, as required to establish a category 2 impairment under the IIA.

The Estate's opposition brief also asserted the testimony of the Department's medical expert, Dr. Darin Davidson, was "legally fallacious." Contrary to the Estate's aspersion, a careful review of the record indicates Dr. Davidson's medical opinions are supported by the record and consistent with applicable legal authority. Unlike Dr. Degan, who relied solely on medical records,

Dr. Davidson examined Idowu when he was alive and his claim was open with the Department. During the examination, Dr. Davidson noted Idowu exhibited "some nonphysiologic or nonanatomic findings" and "atypical" reports of sensations contrary to "what would be typical . . . if there was radiation and pain." Dr. Davidson explained these "nonanatomic" findings can occur where a patient reports low back pain after, as here, a health care provider performs a leg muscle test or applies "light compression on the top of the head," which "should not elicit any symptoms in the lower back." He added that when there are multiple nonanatomic findings during a patient exam, "as is the case in this instance," other "discrepancies," and other "unusual reports," such circumstances "all put together indicate that . . . these symptoms do not have a specific cause in the low back, and so other potential causes for the report of those symptoms become pertinent." Dr. Davidson thus concluded Idowu's condition was a category 1 impairment, which the IIA defines as, "No objective clinical findings. Subjective complaints and/or sensory losses may be present or absent." WAC 296-20-280(1).

Dr. Davidson's report directly addressed the flaws in Dr. Degan's conclusions, explaining:

> [T]enderness is not an objective finding, and even if a person consistently repeatedly over time reports that same objective finding, it does not make it an objective finding.
>
> Objective finding, as it relates to a lumbar condition, would include . . . findings on imaging studies that are attributable to the claim to the injury that we're evaluating.
>
> [T]he fact that an individual, as may be the case in this situation, consistently and repeatedly reports the same symptoms or there's the same objective finding on examination may very well be true.

>     However, that is not objective evidence that would be considered within an impairment rating.

The Estate failed to rebut this testimony with specific facts and admissible evidence establishing *objective clinical findings* of a category 2 impairment.

Lastly, the Estate claims the trial court failed to view the record in the light most favorable to it. That is incorrect. As explained above, the Estate could not avoid summary judgment by asserting that its experts treated Idowu's self-reported tenderness as "objective" in order to show a category 2 impairment. *M.E.*, 15 Wn. App. 2d at 31-32; *Cooper*, 20 Wn.2d at 433. Instead, the Estate was required to produce expert testimony or other admissible evidence supporting Idowu's claim that was not based on speculation, conjecture, assumptions, or mere possibility. *Id.* The Estate failed to produce such evidence, and the trial court correctly concluded that his conclusory assertions about the "objective" nature of his pain are insufficient to avoid summary judgment.[3]

Affirmed.

_____
Feldman, J.

WE CONCUR:

_____          _____
Díaz, J.                                                      Smith, J.

---

[3] The Estate also requests that any "reverse and remand determination" by this court contain a statement regarding recovery of attorney fees in the event it ultimately prevails in the litigation. Because we affirm the trial court's summary judgment ruling in favor of the Department, the Estate is not entitled to the requested relief.